UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Criminal No. 14- |
| | : | |
| v. | : | |
| | : | **VIOLATION:** |
| **BRIAN E. THOMPSON,** | : | 18 U.S.C. § 1343 (Wire Fraud). |
| | : | |
| **Defendant.** | : | **FORFEITURE:** |
| | : | 18 U.S.C. §§ 981(a)(1)(C), 982(a)(1), |
| | : | (a)(2)(B), 28 U.S.C. § 2461(c), 21 U.S.C. |
| | : | § 853(p). |

# INFORMATION

The United States Attorney informs the Court:

## COUNT ONE

### Wire Fraud

### Introduction

At all times material to this Information:

1.  The United States Department of Housing and Urban Development ("HUD") administered various programs whereby the government guaranteed, or insured, home mortgage loans of qualified individuals. One of these programs was the Indian Home Loan Guarantee Program, Title VI, Native American Self Determination Act, 12 U.S.C. §§ 1715 et seq.; the relevant provision was Section 184.

1

2. When a borrower defaulted on a mortgage for a real property guaranteed under Section 184, the mortgage lender foreclosed and the government paid the lender the outstanding balance of the mortgage and any additional servicing costs incurred until the property's ownership was transferred to HUD. The United States government, specifically HUD, would then become the owner of these real estate owned properties ("REO properties"). Thereafter, HUD, through its Office of Public and Indian Housing ("PIH"), Office of Native American Programs ("ONAP"), would sell the REO property on the open market to third parties, without the requirement that the purchaser be Native American. Payments for the sale of REO properties were made through the government's pay.gov account.

3. HUD's Office of Loan Guarantee had approximately 10 employees and handled all of the reselling of HUD REO properties defaulted under the Section 184 program. HUD's Office of Loan Guarantee was located at 451 7th Street SW, Washington, DC 20410.

4. Until August 2014, the defendant BRIAN E. THOMPSON was a Loan Guarantee Specialist with HUD, PIH, ONAP, Office of Loan Guarantee. As a Loan Guarantee Specialist, the defendant THOMPSON's duties included selling Section 184 REO real properties for the best possible price in order to reimburse the government for the payments made to the mortgage lender for the insured loan. The defendant THOMPSON would advise his supervisor of the progress of reselling properties; the supervisor would rely upon the defendant THOMPSON, and upon his recommendation would approve and sign REO sales contracts, property deeds, and settlement statements for each REO property sold.

### The Scheme to Defraud

5. From in or about May, 2013, until in or about March, 2014, within the District of Columbia and elsewhere, the defendant, BRIAN E. THOMPSON, devised and intended to devise a scheme to defraud and for obtaining money and property by materially false and fraudulent pretenses, representations, and promises.

### The Purpose of the Scheme to Defraud

6. It was the purpose of the scheme to defraud that the defendant, BRIAN E. THOMPSON, would sell HUD REO property and siphon off approximately $843,400 of the sales proceeds for himself or for companies under his control.

### The Manner and Means of the Scheme to Defraud

7. It was a part of the scheme to defraud that on about May 15, 2013, in the District of Columbia, the defendant BRIAN E. THOMPSON opened a Bank of America account, in the name of "DBA Federal Housing Urban Devlp Project, Brian E. Thompson, sole prop," with the defendant THOMPSON being the sole signatory on the account.

8. It was a further part of the scheme to defraud that on December 24, 2013, the defendant BRIAN E. THOMPSON arranged for a title and escrow company handling the sale of a HUD REO property located on 82nd Terrace in Coral Springs, Florida ("82nd Terrace property") to send $255,460.21 to Thompson's Federal Housing Urban Development Project bank account with the notation that the payment related to sale of the 82nd Terrace property.

9. It was a further part of the scheme to defraud that the defendant BRIAN E. THOMPSON created and caused to be created false settlement documents concealing the material fact that the 82nd Terrace property sold for $320,000; instead the defendant

THOMPSON submitted a settlement document falsely representing that the sale generated only $41,698 for HUD.

10. It was a further part of the scheme to defraud that the defendant, BRIAN E. THOMPSON, falsely told the title and escrow company that an individual identified here as "KM" was an official at HUD. He also falsely stated that because the HUD REO property had originally been insured through the program to assist Native Americans, a portion of the sales proceeds must be routed to KM, with the remainder sent to the normal HUD account.

11. It was a further part of the scheme to defraud that on October 30, 2013, the defendant BRIAN E. THOMPSON arranged for a title and escrow company handling the sale of a HUD REO property located on Thoroughbred Court, Antioch, California ("Thoroughbred Court property") to send $228,192.80 to a bank account in the name of KM with the notation that the payment related to the sale of the Thoroughbred Court property and the beneficiary as the "Secretary of Housing and Urban Development of Washington, DC."

12. It was a further part of the scheme to defraud that the defendant BRIAN E. THOMPSON created false settlement documents concealing the material fact that HUD REO property on Wilson Lane, Windsor, California sold for $275,000 to KM; instead the defendant THOMPSON submitted a settlement document to his supervisor at HUD falsely representing that the sale was to a third-party and generated only $35,143.40 for HUD.

13. It was a further part of the scheme to defraud that the defendant BRIAN E. THOMPSON caused the following amounts of money to be siphoned off the sales of HUD REO property:

| DATE | HUD REO PROPERTY | AMOUNT |
|---|---|---|
| 6/18/2013 | Summit Drive, Palm Springs, California | $8,574.28 |
| 6/28/2013 | Summit Drive, Palm Springs, California | $32,000.00 |
| 10/30/2013 | Thoroughbred Court, Antioch, California | $228,192.80 |
| 11/12/2013 | Wilson Lane, Windsor, California | $217,469.94 |
| 12/24/2013 | 82nd Terrace, Coral Springs, Florida | $255,460.21 |
| 3/19/2014 | Glen Meadow Lane, Escondido, California | $101,703.27 |

14. On or about December 13, 2013, in the District of Columbia and elsewhere, the defendant, BRIAN E. THOMPSON, for the purpose of executing, and attempting to execute and aiding and abetting the execution of the above-described scheme to defraud, did willfully cause to be transmitted in interstate commerce from the District of Columbia to the State of Indiana, by means of a wire communication, certain signs and signals, that is, an electronic-mail message from his work computer to KM attaching sale documents for the HUD REO property located on 82nd Terrace having requested KM to sign the documents and return them to him in order for the sale of the 82nd Terrace property to be finalized.

**(Wire Fraud, in violation of Title 18, United States Code, § 1343).**

## FORFEITURE ALLEGATION

1. Upon conviction of the offense alleged in Count One of this Information, the defendant, BRIAN E. THOMPSON shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to this offense, pursuant to 18

U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c). The property subject to forfeiture includes, but is not limited to:

> (i) $111,656.90 in U.S. Currency seized by the government on or about July 17, 2014, from Bank of America, N.A. account number xxxx4079, held in the name of Brian Thompson d/b/a Federal Housing Urban Development Project;
>
> and
>
> (ii) $41,805.57 in U.S. currency seized by the government on or about July 11, 2014, from Wells Fargo N.A., account number xxxx6166, held in the name of LABT, Inc.

The United States will seek a forfeiture money judgment against the defendant in the amount of at least $843,400, which will be reduced by the value of any property forfeited to the United States.

2.  If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

> a.  cannot be located upon the exercise of due diligence;
>
> b.  has been transferred or sold to, or deposited with, a third party;
>
> c.  has been placed beyond the jurisdiction of the Court;
>
> d.  has been substantially diminished in value; or
>
> e.  has been commingled with other property that cannot be divided without difficulty;

the defendant shall forfeit to the United States any other property of the defendant, up to the value of the property described above, pursuant to 21 U.S.C. § 853(p).

**(Criminal Forfeiture, pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 982(a)(1), (a)(2)(B), Title 21, United States Code, Section 853(p), Title 28, United States Code, Section 2461(c)).**

RONALD C. MACHEN JR.

United States Attorney
for the District of Columbia

By: _____
VIRGINIA CHEATHAM
Assistant United States Attorney
DC Bar # 411980
Virginia.cheatham@usdoj.gov
United States Attorney's Office
Fraud and Public Corruption Section
555 4th Street, N.W., Room 5836
Washington, D.C. 20530
(202) 252-7820